## RNK DEALER AGREEMENT

THIS AGREEMENT is made by and between RNK, LLC, a Tennessee limited liability company with offices at 3939-B Papermill Drive, Knoxville, Tennessee 37909-2040, ("Distributor"), and _____, a _____ organized and existing under the laws of _____ with its principal place of business at _____ _____, (hereinafter, "Dealer"). This Agreement governs the sale by Distributor to Dealer of digitizing embroidery software programs and other products for sewing, quilting and embroidering which bear the brand names "RNK", "Floriani" and the other brands listed on the Schedule of Branded Products annexed hereto. Any reference herein to "products" shall be deemed inclusive of all Branded Products.

This Agreement shall become effective as of the "Effective Date" set forth at the foot of this Agreement.

§1.01. Distributor hereby appoints Dealer as a nonexclusive dealer of products provided by Distributor, and Dealer agrees to become an Authorized Dealer of Distributor.

§1.02. Dealer is an independent contractor and is not a legal representative, employee, or agent of Distributor for any purpose. Neither Party has any right or authority to incur, assume or create in writing or otherwise, any control over any of the other Party's employees, all of whom are entirely under the control of their employer, who shall be responsible for their acts and omissions. Nothing contained in this Agreement shall be deemed to create any partnership or joint venture relationship between the Parties. Neither Party may legally obligate the other in any way.

§1.03. At its sole cost and expense, Dealer shall engage and maintain a sales organization in its retail store(s) staffed with such experienced personnel as are necessary to enable Dealer to sell the products provided by Distributor.

§1.04. Dealer shall advertise Floriani digitizing embroidery software programs and stock the Floriani Software product lines in the store(s) and/or offer those products on the Dealer's internet website. RNK will make arrangements to supply Dealer with DVD's containing Floriani digitizing embroidery software programs, and Distributor will educate Dealer as to the use of the ESOD system for the purpose of selling and activating such software. Annexed hereto is the ESOD Software System Schedule which contains the procedures for selling, registering and paying for the Floriani digitizing embroidery software programs. In its sole discretion, Distributor may also provide training or education to Dealer personnel for other products.

§1.05. The price Distributor charges the Dealer for Floriani digitizing embroidery software programs shall be established by the Distributor and may be changed by the Distributor, from time to time. Attached hereto, and made an integral part hereof, is the RNK Advertising Policy Agreement. By executing this Agreement, Dealer agrees to be bound as an "Authorized Dealer" by all of the terms and provisions of the attached RNK Advertising Policy Agreement as if Dealer had signed the RNK Advertising Policy Agreement as an Authorized Dealer. Distributor, in its sole discretion, may terminate this Agreement and the status of Dealer hereunder if Dealer violates any provision of the attached RNK Advertising Policy Agreement.

§1.06. In any jurisdiction where resale price maintenance is legal, Distributor may terminate this Agreement if Dealer: (i) sells or offers to sell Distributor's Branded Products at less than seventy percent (70%) of the Distributor's suggested retail price or list price; (ii) sells or supplies any retail outlet or source which does not observe the pricing policy as set forth in this paragraph.

§1.07. Under no circumstances may Dealer: (i) sell any Branded Products (or any product identified as Distributor's product) by auction or on any internet auction site, such as ebay; or (ii) knowingly provide any Branded Product or identifiable product to any third party for that purpose.

§1.08. All deliveries of products sold by Distributor to Dealer (other than Floriani digitizing embroidery software programs) pursuant to this Agreement shall be made F.O.B. the Distributor's warehouse, ("the Warehouse"), and title to and risk of loss of products shall pass from Distributor to Dealer at the Warehouse. Dealer shall be responsible for arranging all shipping of products, but if requested by Dealer, Distributor shall, at Dealer's expense, assist Dealer in making shipping arrangements. Floriani digitizing embroidery software programs will be provided to Dealer in the manner described in the ESOD Software System Schedule annexed hereto.

§1.09. As described in the ESOD Software System Schedule annexed hereto, Dealer shall pay for each activated Floriani digitizing embroidery software programs within ten (10) days of receipt of the invoice therefor. All payments shall be made by Distributor charging Dealer's Visa or MasterCard credit card; Dealer is providing Distributor with said credit card information at the foot of this Agreement. By signing this Agreement, Dealer is authorizing Distributor to charge the referenced credit card account. For all other products sold by Distributor to Dealer, the terms shall be thirty (30) days net, unless other provisions are set forth in a relevant sales or purchase order signed by Distributor.

§1.10. From time to time, Distributor may run a special nationwide sales program. Any such sales program will not void the pricing and/or advertising policies set forth herein; however, Distributor may amend the pricing and/or advertising policies to allow Dealer to be able to sell or advertise particular products at lower prices during the stated sale period only.

§1.11. EXCEPT AS EXPRESSLY WARRANTED IN THIS AGREEMENT OR ON THE PACKAGING FOR A PARTICULAR PRODUCT, DISTRIBUTOR HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS, STATUTORY AND IMPLIED, WITH RESPECT TO ANY PRODUCTS SOLD TO DEALER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTY THAT A PARTICULAR PRODUCT IS DELIVERED FREE OF CLAIMS OF THIRD PARTIES.

§1.12. The total liability of Distributor to Dealer: (i) for any loss, damage or claim, (whether based upon contract, tort (including Distributor's active or passive negligence or strict liability), or otherwise; or (ii) from the design, manufacture, sale, delivery, resale, inspection, assembly, testing, repair, replacement, operation, maintenance or use of any product; or (iii) from the performance of any service; arising out of, connected with, or resulting from this Agreement (or the relationship between Distributor and Dealer); or (iv) arising from the performance or breach of any purchase order or contract of sale

RNK DEALER AGREEMENT FORM 10-04-07



accepted or executed by Distributor with Dealer or pursuant to this Agreement; shall not, in any event, exceed the price allocable to the product or service which gives rise to the claim, loss or damage. Neither Party shall be liable to the other Party for special, indirect, incidental or consequential damages, including but not limited to, loss of revenue, cost of capital, loss of profits or revenue, loss of products, accessories or associated equipment, cost of capital, cost of substituted equipment or parts, facilities or services, down-time costs, labor costs, claims of customers, claims by Dealer of damage to its business reputation, loss of business opportunity, and/or any other type of tangential loss or damage. This waiver shall be binding whether such liability arises out of contract, tort, strict liability, (including negligence), or otherwise arises out of, or related, in whole or in part, to any of Distributor's products, any claimed warranty appertaining to such product(s), and/or any provision in this Agreement.

§1.13    At its sole discretion, Dealer may sell and may provide training to Dealer's customers for using Floriani digitizing embroidery software programs or other products.

§1.14.   Dealer shall indemnify, defend and hold Distributor, its agents, representatives, principals and employees, harmless from and against all expenses, (including attorneys' fees), losses, liabilities and claims for damage to property (including that of Distributor or Dealer) or for injury to or death of any person (including a Party's employee) actually or allegedly resulting directly or indirectly from anything occurring from any cause (including Distributor's active or passive negligence or strict liability) relating to the maintenance or operation of Dealer's premises, anything located thereon, or to any of Dealer's business activities, or from anything occurring from any cause (including Distributor's active or passive negligence or strict liability) relating to the maintenance or operation of the business activities or premises of any other person, company or governmental unit which is a customer of Dealer as to any of Distributor's products or anything located on any customer's premises.  In the event that a claim, liability, loss, damage, cost, and/or expense is caused by an action for which Distributor and Dealer are held jointly liable and for any reason Distributor is not entitled to indemnity from Dealer, such claim, liability, loss, damage, cost, and/or expense shall be allocated between the Parties based upon the theory of comparative negligence.

§1.15.   The Parties have negotiated and agreed to the provisions of this Agreement which address the apportionment of risk, indemnity and waiver of liability, and for adequate consideration, the receipt and sufficiency of which is hereby acknowledged by each Party hereto, each Party has agreed to enter into this Agreement with the intent that such risk apportionment and waivers be valid in light of any applicable anti-indemnity statutes and other applicable laws concerning waivers of liability and indemnification.

§1.16.   Unless earlier terminated by Distributor as permitted hereunder, this Agreement shall be effective for an initial term of one (1) year from the Effective Date noted at the foot of this Agreement, and the Agreement shall continue to be effective thereafter, from month to month; provided, however, that either Party may thereafter terminate this Agreement at any time following its initial term, without cause, by mailing written notice of such termination to the other Party thirty (30) days prior to the effective date of such termination. Notice shall be given in the manner provided in section 1.28 of this Agreement.

§1.17.   Anything to the contrary notwithstanding, this Agreement may be terminated if Dealer fails to timely pay Distributor any monies due to Distributor.

§1.18.   Neither Party shall be liable for any delay or failure to perform hereunder due to floods, riots, strikes, freight embargoes, acts of God, acts of war or hostilities of any nature, terrorist activities, laws or regulations of any governmental unit or agency (foreign or domestic, federal, state, county, or municipal) or any other similar cause beyond the reasonable control of the Party affected. The obligation to pay money in a timely manner for any obligation and/or liability that matured prior to the occurrence of an event described in this section 1.18 shall not be excused by reason of any event described in this section 1.18.

§1.19.   The delay or failure by either Party to exercise any right or to enforce any obligation under this Agreement shall not constitute or be deemed a waiver of that Party's right to thereafter exercise such right or enforce such obligation, nor shall any single or partial exercise or enforcement of any such right or obligation preclude any other or further exercise or enforcement thereof or of any other right or obligation.

§1.19.   No amendment, waiver or termination of any provision of this Agreement shall be effective unless it is in writing and signed by the Party against which the amendment, waiver or termination is sought to be enforced.

§1.20.   This Agreement is intended to be the sole and complete statement of the obligations and rights of the Parties as to all matters covered by this Agreement, and supersedes all previous understandings, agreements, negotiations, and proposals relating thereto. There is, and can be no oral agreement between the Parties.

§1.20.   Neither this Agreement nor any right hereunder nor any interest herein may be assigned by the Dealer. Dealer may not delegate any of its duties or obligations hereunder contracted.

§1.21.   This Agreement shall be governed by, and construed in accordance with the laws of the State of Tennessee, without consideration for conflicts of laws doctrine.

§1.22.   In the event of a dispute between the Parties, there shall be no presumption regarding any language or provision in this Agreement because such language or provision was drafted by a particular Party or its attorney.

§1.23.   Distributor and Dealer desire to maintain a fair and reasonable relationship hereunder. If during the term of this Agreement a dispute arises between Distributor and Dealer, or one Party perceives the other as acting unfairly or unreasonably, or a question of interpretation arises hereunder, the Parties shall promptly confer and exert their best efforts in good faith to reach a reasonable and equitable resolution of the issue.

§1.24.   Any dispute or controversy arising out of or relating to this Agreement which is incapable of informal resolution pursuant to section 1.23, (excluding any claim for payment of monies owned by reason of one or more sale(s) of products to Dealer by Distributor), shall be referred to mediation in the State of Tennessee in Knox County. The costs of the mediation proceeding shall be allocated between the Parties as determined by the mediator.

§1.25.   In the event that mediation is unsuccessful, then an action may be brought by either Party in the appropriate court in the venue of Knox County, Tennessee; both Parties agree that Knox County, Tennessee is the sole appropriate venue and further agree to submit to the personal jurisdiction of the federal or state courts sitting in (or for) Knox County, Tennessee

for purposes of the final resolution. Both Parties agree to accept service of process in any such proceeding by certified mail, return receipt requested, directed to the Party at the address noted in this Agreement, as such address may be changed from time to time by Notice in accordance with section 1.28 of this Agreement. During any dispute or litigation, each Party shall continue to perform on a timely basis as required under this Agreement, and each Party shall continue to make payments of any undisputed amounts owed on a timely basis in accordance with the terms of this Agreement and any relevant purchase order, sales order or other contract. Notwithstanding the foregoing, a Party may initiate formal proceedings with regard to a dispute in order to avoid the expiration of any applicable statute of limitations period. In any dispute arising under this Agreement, each Party shall bear its own attorneys' fees and related expenses.

§1.26. EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED UPON THIS AGREEMENT, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR ANY MATTER OR ACTION ARISING BEWTEEN THE PARTIES BASSED UPON THERELATIONSHIP HEREUNDER ESTABLISHED. EACH PARTY ACKNOWLEDGES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION (AND EACH OTHER PROVISION OF THIS AGREEMENT) AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR EACH TO ENTER INTO THIS AGREEMENT.

§1.27. Unless prohibited by specific contextual reference, any reference in this Agreement to the singular shall refer as well to the plural, and vice versa; similarly, references to the masculine, feminine and neutral forms shall be interchangeable. Any references to a Party shall include its legal successor(s) and permitted assign(s).

§1.28. Any and all notices, designations, consents or any other communication, (hereinafter, collectively referred to as "Notices"), which any Party shall make for any purpose set forth in this Agreement must be written, and shall be delivered by personal delivery, by prepaid registered or certified mail, or by Federal Express Priority Overnight Delivery. Any Notice sent to Distributor shall be sent to RNK, LLC, 3939-B Papermill Drive, Knoxville, Tennessee 37909-2040, with a copy by first class mail, postage prepaid, to Mr. Clifford Wallach, 60 South MacQuesten Parkway, Mount Vernon, NY 10550-1741; any Notice sent to Dealer shall be sent to the address appearing at the foot of this Agreement. All Notices shall be deemed given when actually received or three (3) business days after mailing, whichever first occurs. Personal delivery shall be deemed accomplished if the Notice is served in the same manner in which a summons must be personally served in Tennessee to obtain personal jurisdiction of a defendant in a civil case in the highest court of general jurisdiction; except that service of a Notice may not be effected by delivery of a copy to the Secretary of State or to any other statutorily appointed recipient. Any Notice delivery agent herein authorized shall be deemed disqualified during any time that its regular workers are engaged in a labor strike, a well publicized slow down or similar activity. Each Party hereto shall have the right from time to time and at any time to change its address for service of Notices under this provision (or to designate an additional person or entity to whom or to which a copy of any Notice should be sent) and each Party shall have the right to specify as its address any other address within the United States of America by not less than fifteen (15) days prior Notice to the other Party in the manner required by this section of this Agreement.

§1.29. Each section of this Agreement constitutes a separate and distinct provision hereof. In the event that any provision of this Agreement shall finally be judicially determined to be invalid, ineffective or unenforceable, every other provision of this Agreement will remain in full force and effect. Without further action by the Parties, the invalid, ineffective or unenforceable provision will be automatically amended to effect the original purpose and intent of the invalid, ineffective or unenforceable provision.

§1.30. The person signing below on behalf of Dealer personally represents and warrants that he or she has the authority to sign this Agreement on behalf of Dealer, and that the Dealer Address and EIN number set forth below is correct.

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed by its duly authorized representative. The Effective Date of this Agreement shall be the date appearing below.

Dealer Name: ALLBRANDS LLC

By: JOHN M. DOUTHAT, MRES
(Print Name and Title)
Jonh M. Douthat

Dealer Address:
20415 HIGHLAND ROAD
BATON ROUGE, LA 70817

Dealer EIN: 82-0578326

Effective Date:

Dealer Credit Card Information
Credit Card Issuer (Visa or Mastercard): VISA
Credit Card Number: 4802 3900 0024 8570
Credit Card Expiration Date: 11/08
Three Digit Security Code: 290

290

3